Jack Silver, Esq. SB# 160575
Email: lhm28843@sbcglobal.net
LAW OFFICE OF JACK SILVER
Post Office Box 5469
Santa Rosa, CA 95402-5469
Tel. 707-528-8175
Fax. 707-528-8675

David J. Weinsoff, Esq. SB# 141372
Email: david@weinsofflaw.com
Law Office of David J. Weinsoff
138 Ridgeway Avenue
Fairfax, CA 94930
Tel. (415) 460-9760
Fax. (415) 460-9762

Attorneys for Plaintiff
CALIFORNIA RIVER WATCH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA RIVER WATCH, an IRC Section 501(c)(3) non-profit, public benefit corporation,<br><br>Plaintiff,<br>v.<br><br>COUNTY OF MENDOCINO; SOLID WASTE OF WILLITS, INC; and CITY OF FORT BRAGG,<br><br>Defendants. | CASE NO.<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL PENALTIES, RESTITUTION AND REMEDIATION** [Environmental - Clean Water Act - 33 U.S.C. § 1251 *et seq.*] |

NOW COMES plaintiff CALIFORNIA RIVER WATCH an Internal Revenue Code

Section 501(c)(3) non-profit, public benefit corporation ("RIVER WATCH") by and through its

counsel, and for its Complaint against Defendants COUNTY OF MENDOCINO, SOLID

WASTE OF WILLITS, INC., and CITY OF FORT BRAGG ("DEFENDANTS") hereby alleges:

I.      NATURE OF THE CASE

1.      This is a citizens' suit for relief brought by RIVER WATCH under the Federal Pollution

Control Act, also known as the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.*, including

33 U.S.C. § 1365, 33 U.S.C. §1311, and 33 U.S.C. § 1342, to prevent Defendants from repeated

1

and ongoing violations of the CWA.  These violations are detailed in the "Notice of Violations and Intent to File Suit" dated March 24, 2015, made part of the pleadings of this case, and attached hereto as **EXHIBIT A** ("CWA NOTICE").

2.      RIVER WATCH alleges Defendant County of Mendocino obtained coverage under California's General Industrial Storm Water Permit for Industrial Storm Water Discharges, National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ (as amended by Water Quality Orders 97-03-DWQ and 2014-0057-DWQ) issued pursuant to CWA § 402(p), 33 U.S.C. § 1342(p) (hereafter, "General Permit"), for the Mendocino County Caspar Waste Transfer Station facility, owned by Defendant County of Mendocino under a Joint Powers Authority with Defendant City of Fort Bragg, and operated by Defendant Solid Waste of Willits, Inc., located at 15000 Prairie Way in the City of Mendocino, County of Mendocino, California ("the Facility").

3.      RIVER WATCH alleges DEFENDANTS are routinely violating the substantive and procedural requirements of CWA § 402(p) and the General Permit relating to recycling services at the Facility, by failing to implement effective Best Management Practices ("BMPs") in the Storm Water Pollution Prevention Plan ("SWPPP") for the Facility, resulting in the illegal discharge of pollutants (Chemical Oxygen Demand, pH, iron, and aluminum) from the Facility as reported to the California State Resources Control Board ("SWRCB") in Annual Reports filed by DEFENDANTS for the Facility during the 2012-2013 and 2013-2014 reporting years.

4.      RIVER WATCH alleges that the failure to comply strictly with the mandatory terms and conditions and BMPs required by the General Permit (identified comprehensively in the Federal Environmental Protection Agency's ("EPA") Industrial Stormwater Fact Sheet Series, Sector L: Landfills, Land Application Sites, and Open Dumps (EPA Office of Water, EPA-833-F-06-027, December 2006, and Sector N: Scrap Recycling and Waste Recycling Facilities (EPA Office of Water, EPA-833-F-06-029, December 2006), results in discharges from the Facility in violation of the CWA's prohibition with regard to discharging a pollutant from a point source to waters

of the United States, in this instance Doyle Creek ( which flows to the Pacific Ocean), pursuant to CWA § 301(a), 33 U.S.C. § 1311(a), and CWA § 505(f),  33 U.S.C. § 1365(f).

Ongoing discharges from the Facility as reported by Defendant County of Mendocino exceed the EPA "Benchmarks" for the following pollutants:

**2013-2014 Reporting Year**[1]

January 30, 2014 Sample:

- SW-1

Iron – 27.0 mg/L

Aluminum – 19.0 mg/L

- SW-2

Iron – 10.0 mg/L

Aluminum – 10.0 mg/L

November 20, 2013 Sample:

- SW-1

Iron – 7.6 mg/L

Aluminum – 7.1 mg/L

- SW-2

Iron – 1.2 mg/L

Aluminum – 0.94 mg/L

**2012-2013 Reporting Year**[2]

January 25, 2013 Sample:

- SW-1

---

[1] These exceedances of EPA Benchmarks are confirmed in correspondence from Mona Dougherty, P.E., Senior Water Resource Control Engineer at the Regional Water Quality Control Board, North Coast Region ("RWQCB") to the Casper Transfer Station dated October 2, 2014 (similar correspondence dated October 1, 2104 can be found in the RWQCB's file for the Facility).

[2] These exceedances of EPA Benchmarks are confirmed in correspondence from Mona Dougherty, P.E., Senior Water Resource Control Engineer at the RWQCB to the Casper Transfer Station dated July 15, 2013.

pH – 3.98

- SW-2

pH – 5.59

Aluminum – 1.3 mg/L

November 26, 2012 Sample:

- SW-1

pH – 4.26

Aluminum – 3.6 mg/L

Iron – 4.5 mg/L

Chemical Oxygen Demand – 210 mg/L

- SW-2

pH – 4.29

Aluminum – 0.96 mg/L

Chemical Oxygen Demand – 160 mg/L

5.   RIVER WATCH alleges DEFENDANTS own and operate a scrap and waste materials operation (classified under SIC 5093) and a "refuse system" (classified under SIC 4953) at the Facility.  DEFENDANTS accept the following items at the Facility:  "consumer electronics (televisions, computers, monitors, stereos, VCRs, phones, etc.)," "household batteries," "automobile batteries," "motor oil," "newspaper, cardboard, office paper, food and beverage glass, steel cans, and plastic food and beverage containers,"  "trash, nonferrous scrap metal, scrap iron and steel, appliances, wood, yardwaste, and tires" (http://www.mendorecycle.org/abt_Caspar.html; March 20, 2015).  Operations at the Facility are conducted both indoors and outdoors.  Because the real  property on which the Facility is located is subject to rain events, and because there is no RWQCB exemption from collecting and analyzing the range of pollutants discharged from the Facility, there can be a discharge of these pollutants to Doyle Creek, which discharges to the Pacific Ocean.

6.   RIVER WATCH seeks declaratory relief, injunctive relief to prohibit future violations and the imposition of civil penalties, and other relief for DEFENDANTS' violations of the CWA

4

Complaint for Injunctive Relief, Civil Penalties, Restitution and Remediation
[Environmental - Clean Water Act 33 U.S.C. § 1251 *et seq.*]

1   as set forth and alleged in this Complaint.

2   **II.     PARTIES TO THE ACTION**

3   7.     RIVER WATCH is, and at all times relevant to this Complaint was, an Internal Revenue

4   Code § 501(c)(3) nonprofit, public benefit corporation organized under the laws of the State of

5   California, with headquarters located in Sebastopol, California and offices in Los Angeles,

6   California.  The mailing address of RIVER WATCH'S northern California office is 290 S. Main

7   Street, #817, Sebastopol, California 95472. RIVER WATCH's southern California mailing

8   address is 7401 Crenshaw Boulevard, # 422, Los Angeles, California 90043. The specific

9   purpose of RIVER WATCH is to protect, enhance and help restore surface and ground waters

10  of California including rivers, creeks, streams, wetlands, vernal pools, aquifers and associated

11  environs, biota, flora and fauna, and to educate the public concerning environmental issues

12  associated with these environs. Members of RIVER WATCH reside in northern California

13  where the Facility which is the subject of this Complaint is located. Said members have interests

14  in the waters and watersheds which are or may be adversely affected by DEFENDANTS'

15  discharges and violations as alleged herein. Said members use the effected waters and watershed

16  areas for recreation, sports, fishing, swimming, hiking, photography, nature walks and/or the

17  like.  Furthermore, the relief sought will redress the injury in fact, likelihood of future injury, and

18  interference with the interests of said members.

19  8.     RIVER WATCH is informed and believes, and on such information and belief alleges,

20  that Defendant County of Mendocino is now, and at all times relevant to this Complaint was, a

21  government entity organized under the laws of the State of California with administrative offices

22  located in northern California at 501 Low Gap Road, Ukiah, California.

23  9.     RIVER WATCH is informed and believes, and on such information and belief alleges,

24  that Defendant City of Fort Bragg is now, and at all times relevant to this Complaint was, a

25  political subdivision organized and existing under the laws of the State of California with

26  administrative offices located in Northern California at 416 Franklin Street, Fort Bragg,

27  California.

28

10.     RIVER WATCH is informed and believes, and on such information and belief alleges, that Defendant Solid Waste of Willits, Inc. is now, and at all times relevant to this Complaint was, a corporation organized and existing under the laws of the State of California, and registered with the State of California as located at 7925 Oak Pond Court, Redwood Valley, California, and doing business as a scrap and waste materials operation under Standard Industrial Code No. 5093 and a refuse system under Standard Industrial Code No. 4953, at the Facility.

11.     RIVER WATCH is informed and believes, and on such information and belief alleges, that Defendants County of Mendocino and City of Fort Bragg, under a Joint Powers Agreement, are now, and at all times relevant to this Complaint were, the owners of the Facility.

## III.     GENERAL

12.     Defendant County of Mendocino submitted a Notice of Intent ("NOI") to the SWRCB for coverage under the General Permit for the Facility and on or about November 17, 1992 obtained said coverage. The SWRCB assigned Waste Discharger Identification ("WDID") number 1 23I005731 to Defendant County of Mendocino, authorizing it to operate the Facility consistent with the strict terms and requirements imposed under the General Permit. Compliance with the terms and conditions (the environmental protections) within the General Permit are not voluntary.  In the absence of an express "exemption" by the SWRCB from any of the General Permit's terms and conditions, DEFENDANTS are required to comply strictly with each and every one of them.  RIVER WATCH's review of the mandated Annual Reports submitted by Defendant County of Mendocino to the RWQCB for the Facility for the reporting years 2012-2013 and 2013-2014 reveals violations of the General Permit at the Facility during this time period, specifically the failure to comply fully with the requirements to: prepare, implement, review, and update an adequate SWPPP and eliminate all non-authorized storm water discharges. These alleged violations are detailed and specifically described in the CWA NOTICE.

## IV.     JURISDICTIONAL ALLEGATIONS

13.     Under 33 U.S.C. § 1251(e), Congress declared its goals and policies with regard to public participation in the enforcement of the CWA.  33 U.S.C. § 1251(e) provides, in relevant part:

6

Public participation in the development, revision, and enforcement of any regulation, standard, effluent limitation, plan or program established by the Administrator or any State under this chapter shall be provided for, encouraged, and assisted by the Administrator and the States.

14.     Subject matter jurisdiction is conferred upon this Court by CWA § 505(a)(1), 33 U.S.C. § 1365(a)(1), which states in relevant part,

" … any citizen may commence a civil action on his own behalf - against any person . . . .who is alleged to be in violation of (A) an effluent standard or limitation. . . . or (B) an order issued by the Administrator or a State with respect to such a standard or limitation ..."

For purposes of CWA § 505, "the term 'citizen' means a person or persons having an interest which is or may be adversely affected." (33 U.S.C. § 1365(g)).

15.     All illegal discharges and activities complained of in this Complaint and in the CWA NOTICE occur in Doyle Creek which drains to the Pacific Ocean – both waters of the United States.

16.     Members and supporters of RIVER WATCH reside in the vicinity of, derive livelihoods from, own property near, and/or recreate on, in or near, and/or otherwise use, enjoy and benefit from the waterways and associated natural resources into which DEFENDANTS allegedly discharge pollutants, or by which DEFENDANTS' operations at the Facility adversely affect those members' interests, in violation of the protections embedded in the NPDES Permitting program and the General Permit, CWA § 301(a), 33 U.S.C. § 1311(a), CWA § 505(a)(1),  33 U.S.C. § 1365(a)(1), and CWA § 402, 33 U.S.C. § 1342.  The health, economic, recreational, aesthetic and environmental interests of RIVER WATCH and its members may be, have been, are being, and will continue to be adversely affected by DEFENDANTS' unlawful violations as alleged herein.   RIVER WATCH contends there exists an injury in fact to its members, causation of that injury by DEFENDANTS' complained of conduct, and a likelihood that the requested relief will redress that injury.

17.     Pursuant to CWA § 505(c)(3), 33 U.S.C. § 1365(c)(3), a copy of this Complaint has been served on the United States Attorney General and the Administrator of the Federal EPA.

18.     Pursuant to CWA § 505(c)(1), 33 U.S.C. § 1365(c)(1), venue lies in this District as the location of the Facility where the alleged illegal discharges occurred, as well as the source of the violations complained of in this action, are located within this District.

**V.     STATUTORY AND REGULATORY BACKGROUND**

19.     CWA § 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States unless such discharge is in compliance with various enumerated sections of the Act.  Among other things, Section 301(a) prohibits discharges not authorized by, or in violation of, the terms of an individual NPDES permit or a general NPDES permit issued pursuant to CWA § 402(p), 33 U.S.C. § 1342.  CWA § 402(p), 33 U.S.C. § 1342(p), establishes a framework for regulating storm water discharges under the NPDES program. States with approved NPDES permitting programs are authorized under this section to regulate storm water discharges through permits issued to dischargers and/or through the issuance of a single, statewide general permit applicable to all storm water dischargers. Pursuant to CWA § 402, the Administrator of the U.S. EPA has authorized the SWRCB to issue NPDES permits including general NPDES permits in California.

20.     The SWRCB elected to issue a statewide general permit for industrial discharges, and issued the General Permit on or about November 19, 1991, modified the General Permit on or about September 17, 1992, reissued the General Permit on or about April 17, 1997, and amended the General Permit on or about April 1, 2014, pursuant to CWA § 402(p).

21.     In order to discharge storm water lawfully in California, industrial dischargers must comply with the terms of the General Permit or have obtained an individual NPDES permit and complied with its terms.

22.     The EPA has established Parameter Benchmark Values ("EPA Benchmarks") as guidelines for determining whether a facility discharging storm water has implemented the requisite Best Available Economically Achievable ("BAT") and Best Conventional Pollutant Control Technology ("BCT"). (65 Fed. Reg. 64746, 64767 (Oct. 30, 2000)).  California Toxics Rule ("CTR") limitations are also applicable to all non storm water and storm water discharges. (40 C.F.R. part 131).

23.     The RWQCB has established applicable water quality standards. This Basin Plan includes a narrative toxicity standard and a narrative oil and grease standard.  The Basin Plan provides that "[w]aters shall not contain suspended material in concentrations that cause nuisance or adversely affect beneficial uses." The Basin Plan establishes limits on metals, solvents, pesticides and other hydrocarbons.

24.     CWA § 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of pollutants from a "point source" into the navigable waters of the United States, unless such discharge is in compliance with applicable effluent limitations as set by the EPA and the applicable State agency.  These limits are to be incorporated into a NPDES permit for that specific point source.  Additional sets of regulations are set forth in the Basin Plan, the Code of Federal Regulation and other regulations promulgated by the EPA and the SWRCB.

25.     CWA § 301(a) prohibits discharges of pollutants or activities not authorized by, or in violation of an effluent standard or limitation or an order issued by the EPA or a State with respect to such a standard or limitation including a NPDES permit issued pursuant to CWA § 402, 33 U.S.C. § 1342.  The pollutants being discharged by DEFENDANTS from the Facility are discharged from point sources under the CWA.

26.     The affected waterways detailed in this Complaint and in the CWA NOTICE are navigable waters of the United States within the meaning of CWA § 502(7), 33 U.S.C. § 1362(7).

27.     RIVER WATCH alleges DEFENDANTS have not fully developed BMPs and/or adequately implemented a SWPPP for the operations at the Facility and the property upon which the Facility is sited, as evidenced by the fact that DEFENDANTS have failed and are failing to operate the Facility in full compliance with the terms and conditions imposed by the General Permit.

## VI.    VIOLATIONS

28.     The enumerated violations are detailed in the CWA NOTICE and below, designating the section of the CWA violated by the described activity.

//

## VII.   FIRST CLAIM FOR RELIEF

### Discharges of Non-storm Water in Violation of Permit Conditions and the CWA

### (Violations of 33 U.S.C. §§ 1311, 1342)

29.     RIVER WATCH realleges and incorporates by reference the allegations of Paragraphs 1 through 28 as though fully set forth herein including all allegations in the CWA NOTICE.

30.     Discharge Prohibition Section A(1) of SWRCB Water Quality Order 97-03-DWQ (the expired General Permit), and Discharge Prohibition Section III.B of SWRCB Water Quality Order 2014-0057-DWQ (the General Permit newly adopted on April 1, 2014), prohibit non-storm water discharges that discharge either directly or indirectly to waters of the United States. It requires either the elimination of those non-storm water discharges or requires that a discharger obtain a separate NPDES permit for the discharges.

31.     Discharges from the Facility are not a type of authorized non-storm water discharge authorized by Special Condition D(1) of SWRCB Water Quality Order 97-03-DWQ (the expired General Permit), or Authorized Non-Storm Water Discharges Section IV of SWRCB Water Quality Order 2014-0057-DWQ (the General Permit newly adopted on April 1, 2014).

32.     RIVER WATCH is informed and believes, and thereupon alleges, that since at least July 1, 2012, based on Annual Reports submitted to the SWRCB by DEFENDANTS, DEFENDANTS have been discharging non-storm water from the Facility in violation of Discharge Prohibition Section A(1) of SWRCB Water Quality Order 97-03-DWQ (the expired General Permit), and Discharge Prohibition Section III.B of SWRCB Water Quality Order 2014-0057-DWQ (the General Permit newly adopted on April 1, 2014). Said non-storm water discharges enter Doyle Creek and are discharged to the Pacific Ocean.

33.     Every day since at least July 1, 2012 that DEFENDANTS have discharged and continue to discharge non-storm water from the Facility in violation of the General Permit is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a). These violations are ongoing and continuous.

//

//

## VIII.   SECOND CLAIM FOR RELIEF

### Failure to Implement the Best Available and Best Conventional Treatment Technologies

### (Violations of 33 U.S.C. §§ 1311, 1342)

34.     RIVER WATCH realleges and incorporates by reference the allegations of Paragraphs 1 through 33 as though fully set forth herein including all allegations in the CWA NOTICE.

35.     Effluent Limitation Section B(3) of SWRCB Water Quality Order 97-03-DWQ (the expired General Permit), and Effluent Limitations Section V.A of SWRCB Water Quality Order 2014-0057-DWQ (the General Permit newly adopted on April 1, 2014), require dischargers to reduce or prevent pollutants in their storm water discharges through implementation of BAT for toxic and non-conventional pollutants and BCT for conventional pollutants. DEFENDANTS have failed in their SWPPP to implement BAT and BCT at the Facility for the storm water discharges from the Facility to the Doyle Creek.

36.     Each day since July 1, 2012 that DEFENDANTS have failed to develop and implement BAT and BCT in violation of the General Permit is a separate and distinct violation of the General Permit and Section 301(a) of the Act, 33 U.S.C. § 1311(a).

37.     DEFENDANTS have been in violation of the BAT/BCT and the SWPPP requirements set forth in the General Permit every day since July 1, 2012.  DEFENDANTS continue to be in violation of the BAT/BCT and the SWPPP requirements set forth in the General Permit each day they fail to develop and fully implement BAT/BCT for discharges from the Facility.

## IX.     RELIEF REQUESTED

WHEREFORE, RIVER WATCH prays that the Court grant the following relief:

38.     Declare DEFENDANTS to have violated and to be in violation of the CWA;

39.     Issue an injunction ordering DEFENDANTS to immediately operate the Facility in compliance with the NPDES permitting requirements in the CWA;

40.     Order DEFENDANTS to pay civil penalties per violation/per day for their violations of the CWA as alleged in this Complaint;

41.     Order DEFENDANTS to pay RIVER WATCH's reasonable attorneys' fees and costs

(including expert witness fees), as provided by 33 U.S.C. § 1365(d) and applicable California law; and,

42.     Grant such other and further relief as may be just and proper.


DATED: July 13, 2015                    LAW OFFICE OF JACK SILVER


                                        By:    _____/s/ Jack Silver_____
                                               JACK SILVER
                                               Attorney for Plaintiff
                                               CALIFORNIA RIVER WATCH



# EXHIBIT A

LAW OFFICE OF
DAVID J. WEINSOFF
138 Ridgeway Avenue
Fairfax, California 94930
tel. 415·460·9760 / fax. 415·460·9762
david@weinsofflaw.com

*Via Certified Mailing – Return Receipt*

March 24, 2015

Members of the City Council
City of Ft. Bragg
416 No. Franklin Street
Ft. Bragg, CA 95437

Members of the Board of Supervisors
c/o Carmen J. Angelo
Chief Executive Officer/Clerk of the Board
County of Mendocino
501 Low Gap Road, Room 1010
Ukiah, CA 95482

Solid Waste of Willits, Inc.
351 Franklin Avenue
Willits, CA 95437

Empire Waste Management - Ukiah
450 Orr Springs Road
Ukiah, CA 95482

Re:   **Notice of Violations and Intent to File Suit Under the Federal Water Pollution Control Act (Clean Water Act)**

To Whom It May Concern:

**NOTICE**

This Notice is provided on behalf of California River Watch ("River Watch") in regard to violations of the Clean Water Act ("CWA" or "Act") 33 U.S.C. § 1251 *et seq.*, that River Watch believes are occurring at the Caspar Transfer Station ("Caspar facility") located on Prairie Way in Mendocino, California. Notice is being sent to you as the responsible owners, operators, and/or managers of this facility and real property. This Notice addresses the violations of the CWA, including violation of the terms of the General California Industrial Storm Water Permit, and the unlawful discharge of pollutants from the Caspar facility into Doyle Creek.

CWA § 505(b) requires a citizen to give notice of the intent to file suit sixty (60) days prior to the initiation of a civil action under Section 505(a) of the Act. Notice must be given to the alleged violator, the U.S. Environmental Protection Agency ("EPA"), and the state in which the violations occur.

As required by the CWA, this Notice provides notice of the violations that have occurred, and continue to occur at the Caspar facility. Consequently, the City of Ft. Bragg, County of Mendocino, Solid Wastes of Willits, Inc., and Empire Waste Management - Ukiah (collectively referred to hereafter as the "Discharger") is placed on formal notice by River Watch that after the expiration of sixty (60) days from the date of this Notice, River Watch will be entitled to bring suit in the United States District Court against the Discharger for continuing violations of an effluent standard or limitation, National Pollutant Discharge Elimination System ("NPDES") permit condition or requirement, or Federal or State Order issued under the CWA (in particular, but not limited to, CWA § 301(a), § 402(p), and § 505(a)(1), as well as the failure to comply with requirements set forth in the Code of Federal Regulations and the North Coast Regional Water Quality Control Board ("RWQCB") Water Quality Control Plan or "Basin Plan."

The CWA requires that any Notice regarding an alleged violation of an effluent standard or limitation, or of an order with respect thereto, shall include sufficient information to permit the recipient to identify the following:

1.    *The specific standard, limitation, or order alleged to have been violated.*

To comply with this requirement, River Watch notices the Discharger of ongoing violations of the substantive and procedural requirements of CWA § 402(p) and violations of NPDES Permit No. CAS000001, State Water Resources Control Board, Order No. 92-12-DWQ as amended by Order No. 97-03-DWQ (the "General Permit") relating to the refuse and recycling services at the Caspar facility.

The Discharger filed a Notice of Intent ("NOI") agreeing to comply with the terms and conditions of the General Permit. The State Water Resources Control Board approved the NOI on or about November 17, 1992, and the Discharger was assigned Waste Discharger Identification ("WDID") number 1 231005731. River Watch contends that in the operation of the Caspar facility, the Discharger has failed and is failing to comply with the terms and conditions of the General Permit requiring the preparation, implementation, review and update of an adequate Storm Water Pollution Prevention Plan ("SWPPP"), and ensuring that the Best Management Practices ("BMPs") in the SWPPP are not only being implemented, but are adequate in reducing or preventing pollutants discharged from the Caspar facility.

a.    <u>SWPPP and BMPs are Inadequate to Reduce or Prevent Discharges of Pollutants from the Caspar Facility During the 2012-2013 through 2013-2014 Annual Reporting Years</u>

The Annual Report form, in the Section titled *Specific Information*, "Annual Comprehensive Site Compliance Evaluation (ACSCE)," <u>II.  ACSCE Checklist</u>, Subparagraph 6, questions "Have you reviewed your SWPPP to assure that a) the BMPs

are adequate in reducing or preventing pollutants in storm water discharges and authorized non-storm water discharges, and b) the BMPs are being implemented?" Assuming the Discharger has prepared and implemented a current SWPPP, it fails to ensure that the BMPs provide for the reduction or prevention of the pollutant discharges identified in the Discharger's Annual Reports as alleged in paragraph "b" below.

b.      Noncompliance with General Permit Storm Water Controls in the 2012-2013 and 2013-2014 Annual Reporting Years

The Annual Report form, in the Section titled *Specific Information*, "Annual Comprehensive Site Compliance Evaluation (ACSCE)," I. ACSCE Evaluation Report, requires "[t]he facility operator ... to provide an evaluation report that includes ... any incidents of non-compliance and the corrective actions taken." The Discharger allegedly failed and is failing to eliminate the reported ongoing discharges from the Caspar facility that exceed EPA "Benchmarks" for the following pollutants:

**2013-2014 Reporting Year[1]**

January 30, 2014 Sample:

o      *SW-1*

Iron – 27.0 mg/L
Aluminum – 19.0 mg/L

o      *SW-2*

Iron – 10.0 gm/L
Aluminum – 10.0 mg/l

November 20, 2013 Sample:

o      *SW-1*

Iron – 7.6 mg/L
Aluminum – 7.1 mg/L

o      *SW-2*

---

[1] EPA "Benchmarks" for the listed pollutants –Aluminum (Al) 0.75mg/L; Iron (Fe) 1.0 mg/L; COD 120 mg/L; pH 6.0-9.0. These exceedances of EPA Benchmarks are confirmed in correspondence from Mona Dougherty, P.E., Senior Water Resource Control Engineer at the RWQCB to the Casper Transfer Station on July 15, 2013 and October 2, 2014 (an identical October 17, 2014 letter is included in the RWQCB file).

Iron – 1.2 mg/L
Aluminum – 0.94 mg/L

**2012-2013 Reporting Year**

January 25, 2013 Sample:

o    *SW-1*

pH – 3.98

o    *SW-2*

pH – 5.59
Aluminum – 1.3 mg/L

November 26, 2012 Sample:

o    *SW-1*

pH – 4.26
Aluminum – 3.6 mg/L
Iron – 4.5 mg/L
Chemical Oxygen Demand – 210 mg/L

o    *SW-2*

pH – 4.29
Aluminum – 0.96 mg/L
Chemical Oxygen Demand – 160 mg/L

c.    Certification of Compliance With General Permit for the 2012-2013 and 2013-2014 Annual Reporting Years

The Annual Report form, in the Section titled *Specific Information*, "Annual Comprehensive Site Compliance Evaluation (ACSCE)," J. ACSCE Certification requires facilities covered under the General Permit to state "[b]ased on your ACSCE, do you certify compliance with the Industrial Activities Storm Water General Permit?" The alleged failures to fully and accurately ensure compliance with the requirements of the General Permit as detailed above contradicts both the "ACSME Certification" and the signed "Annual Report Certification," which provides that the signer of the Annual Report attests that the "information submitted is, to the best of my knowledge and belief, true, accurate and complete."

2.    *The activity alleged to constitute a violation.*

The Discharger operates a scrap and waste materials operation (classified under SIC 5093), and a "refuse system" (classified under SIC 4953). The Discharger accepts the following items at the Caspar facility: "consumer electronics (televisions, computers, monitors, stereos, VCRs, phones, etc.)," "household batteries," "automobile batteries," "motor oil," "newspaper, cardboard, office paper, food and beverage glass, steel cans, and plastic food and beverage containers," "trash, nonferrous scrap metal, scrap iron and steel, appliances, wood, yardwaste, and tires." (http://www.mendorecycle.org/abt_Caspar.html; March 20, 2015). The work at the Caspar facility is conducted both indoors and outdoors. Because the property on which the Caspar facility is located is subject to rain events, and because there is no RWQCB exemption from the collecting and analyzing of the range of pollutants identified above, there can be a discharge of these pollutants to Doyle Creek.

To properly regulate these activities and control the discharge of these types of pollutants, the State Water Resources Control Board requires industrial facilities to obtain and comply with the terms and conditions of an individual NPDES permit or seek coverage under the General Permit (or obtain a proper exemption under the terms of the General Permit from its requirements). Review of the public record by River Watch reveals that the Discharger obtained coverage under the General Permit but fails to comply with its environmentally protective requirements, in particular the implementation of effective BMPs.

3.    *The person or persons responsible for the alleged violation.*

The persons responsible for the alleged violations are the City of Ft. Bragg and County of Mendocino, who hold joint ownership of the Caspar facility under a Joint Powers Agreement, and Solid Waste of Willits, Inc. and Empire Waste Management of Ukiah, both of whom operate the Caspar facility, collectively referred to herein as the Discharger, as well as those other persons who hold an ownership or operating interest in the Caspar facility.

4.    *The location of the alleged violation.*

The location of the various violations is the permanent address of the Caspar facility at 15000 Prairie Way and/or 14000 Prairie Way in Mendocino, California, including the waters of Doyle Creek – a water of the United States. .

5.    *The date or dates of violation or a reasonable range of dates during which the alleged activity occurred.*

The range of dates covered by this Notice is from March 24, 2010 to March 24, 2015. River Watch will from time to time further update this Notice to include all

violations which occur after the range of dates covered by this Notice. Some of the violations are continuous in nature, therefore each day constitutes a violation.

6.   *The full name, address, and telephone number of the person giving notice.*

The entity giving this Notice is California River Watch, referred to herein as "River Watch." River Watch is an Internal Revenue Code § 501(c)(3) non-profit, public benefit corporation organized under the laws of the State of California, with headquarters located in Sebastopol, California and offices in Los Angeles, California. The mailing address of River Watch's northern California office is 290 S. Main Street, #817, Sebastopol, CA 95472. The mailing address of River Watch's southern California office is 7401 Crenshaw Blvd. #422, Los Angeles, CA 90043. River Watch is dedicated to protect, enhance, and help restore surface and ground waters of California including rivers, creeks, streams, wetlands, vernal pools, aquifers and associated environs, biota, flora and fauna. And to educate the public concerning environmental issues associated with these environs.

River Watch members residing and recreating in the area of the Caspar facility and the surrounding watershed have a vital interest in bringing the Discharger's operations at the Caspar facility into compliance with the CWA.

River Watch has retained legal counsel with respect to the issues raised in this Notice. All communications should be directed to:

> David Weinsoff, Esq.
> Law Office of David Weinsoff
> 138 Ridgeway Avenue
> Fairfax, CA 94930
> Tel. 415-460-9760
> Email: david@weinsofflaw.com

## STATUTORY BACKGROUND

CWA § 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States unless such discharge is in compliance with various enumerated sections of the Act. Among other things, Section 301(a) prohibits discharges not authorized by, or in violation of, the terms of an individual NPDES permit or a general NPDES permit issued pursuant to CWA § 402(p), 33 U.S.C. § 1342. CWA § 402(p), 33 U.S.C. § 1342(p), establishes a framework for regulating storm water discharges under the NPDES program. States with approved NPDES permitting programs are authorized under this section to regulate storm water discharges through permits issued to dischargers and/or through the issuance of a single, statewide general permit applicable to all storm water dischargers. Pursuant to CWA § 402, the Administrator of the U.S. EPA has authorized

California's State Water Resources Control Board to issue NPDES permits including general NPDES permits in California.

The State Water Resources Control Board elected to issue a statewide general permit for industrial discharges, and issued the General Permit on or about November 19, 1991, modified the General Permit on or about September 17, 1992, and reissued the General Permit on or about April 17, 1997, pursuant to CWA § 402(p).

In order to discharge storm water lawfully in California, industrial dischargers must comply with the terms of the General Permit or have obtained an individual NPDES permit and complied with its terms.

The General Permit contains certain absolute prohibitions. Discharge Prohibition Order Section A(1) of the General Permit prohibits the direct or indirect discharge of materials other than storm water ("non-storm water discharges"), which are not otherwise regulated by a NPDES permit, to waters of the United States. Discharge Prohibition Order Section A(2) prohibits storm water discharges and authorized non-storm water discharges that cause or threaten to cause pollution, contamination, or nuisance. Receiving Water Limitation Order Section C(1) prohibits storm water discharges to any surface or groundwater that adversely impact human health or the environment. Receiving Water Limitation Order Section C(2) prohibits storm water discharges that cause or contribute to an exceedance of any applicable water quality standards contained in a Statewide Water Quality Control Plan or the applicable Regional Water Quality Control Board Basin Plan.

In addition to absolute prohibitions, the General Permit contains a variety of substantive and procedural requirements that dischargers must meet. Facilities discharging, or having the potential to discharge, storm water associated with industrial activity that have not obtained an individual NPDES permit must apply for coverage under the General Permit by filing a NOI. The General Permit requires existing dischargers to file NOIs before March 30, 1992.

Dischargers must also develop and implement a SWPPP which must comply with the standards of BAT and BCT. The SWPPP must, among other requirements:

- Identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of storm and non-storm water discharges from the facility, and identify and implement site-specific BMPs to reduce or prevent pollutants associated with industrial activities in storm water and authorized non-storm water discharges [Permit Section A(2)]. BMPs must implement BAT and BCT [Permit Section B(3)].

- Include a description of individuals and their responsibilities for developing and implementing the SWPPP [Permit Section A(3)]; a site map showing the facility

boundaries, storm water drainage areas with flow pattern and nearby water bodies, the location of the storm water collection, conveyance and discharge system, structural control measures, impervious areas, areas of actual and potential pollutant contact, and areas of industrial activity [Permit Section A(4)]; a list of significant materials handled and stored at the site [Permit Section A(5)]; and, a description of potential pollutant sources including industrial processes, material handling and storage areas, dust and particulate generating activities, and a description of significant spills and leaks, a list of all non-storm water discharges and their sources, and a description of locations where soil erosion may occur [Permit Section A(6)].

Include a narrative assessment of all industrial activities and potential pollutant sources at the facility [Permit Section A(7)]. Include a narrative description of the BMPs to be implemented at the facility for each potential pollutant and its source, and consider both non-structural BMPs (including "Good Housekeeping") and structural BMPs where non-structural BMPs are not effective [Permit Section A(8)].

Conduct one comprehensive site compliance evaluation by the facility operator in each reporting period (July 1- June 30), with SWPPP revisions made, as appropriate, and implemented within 90 days of the evaluation [Permit Section A(9)].

The General Permit requires dischargers to eliminate all non-storm water discharges to storm water conveyance systems other than those specifically set forth in Special Condition D(1)(a) of the General Permit and meeting each of the conditions set forth in Special Condition D(1)(b).

As part of their monitoring program, dischargers must identify all storm water discharge locations that produce a significant storm water discharge, evaluate the effectiveness of BMPs in reducing pollutant loading, and evaluate whether pollution control measures set out in the SWPPP are adequate and properly implemented. Dischargers must conduct visual observations of these discharge locations for at least one storm per month during the wet season (October through May) and record their findings in their Annual Report [Permit Section B(14)]. Dischargers must also collect and analyze storm water samples from at least two storms per year in compliance with the criteria set forth in Permit Section B(5). Dischargers must also conduct dry season visual observations to identify sources of non-storm water pollution in compliance with Permit Section B(7).

Permit Section B(14) of the General Permit requires dischargers to submit an "Annual Report" by July 1 of each year to the executive officer of the relevant Regional Water Quality Control Board. Permit Section A(9)(d) of the General Permit requires the dischargers to include in the annual report an evaluation of the dischargers' storm water controls, including certifying compliance with the General Permit. *See also* Permit Sections C(9), C(10) and B(14).

The EPA has established Parameter Benchmark Values ("EPA Benchmarks") as guidelines for determining whether a facility discharging storm water has implemented the requisite BAT and BCT. (65 Fed. Reg. 64746, 64767 (Oct. 30, 2000)). California Toxics Rule ("CTR") limitations are also applicable to all non-storm water and storm water discharges. (40 C.F.R. part 131).

The RWQCB has established applicable water quality standards. This Basin Plan includes a narrative toxicity standard and a narrative oil and grease standard. The Basin Plan provides that "[w]aters shall not contain suspended material in concentrations that cause nuisance or adversely affect beneficial uses." The Basin Plan establishes limits on metals, solvents, pesticides and other hydrocarbons.

**VIOLATIONS**

River Watch contends that between March 24, 2010 and March 24, 2015, the Discharger violated the CWA, the Basin Plan and the Code of Federal Regulations by discharging pollutants from the Caspar facility to waters of the United States, in particular Doyle Creek, without an individual NPDES permit, or in violation of the General Permit.

The violations discussed herein are derived from eye witness reports and records publicly available, or records in the possession and control of the Discharger. Furthermore, River Watch contends these violations are continuing.

Finally, River Watch also believes that the Caspar facility is not operated to ensure that storm and non-storm water discharges are properly contained, controlled, and/or monitored. As a result, the Discharger fails to follow the requirements of the General Permit in its sampling protocols for the Caspar facility by failing to accurately capture "first flush" samples and failing to properly sample from all the outfalls of that facility.

**REMEDIAL MEASURES REQUESTED**

River Watch believes that implementation of the following remedial measures are necessary in order to bring the Discharger into compliance with the CWA and reduce the biological impacts of its non-compliance upon public health and the environment surrounding the Caspar facility:

1. Prohibition of the discharges of pollutants including, but not limited to:

   - pH, Total Suspended Solids, Specific Conductance, Total Organic Carbon or Oil & Grease (standard parameters); and,

   - Total Suspended Solids, COD, heavy metals (including aluminum, iron, lead, copper and zinc, the Table D parameters for Sector "N" SIC 5093 facilities)

2.     Compliance with the terms and conditions of the General Permit, and BMPs detailed in the EPA's Industrial Stormwater Fact Sheet Series:

- "Sector L:  Landfills, Land Application Sites, and Open Dumps" (EPA Office of Water, EPA-833-F-06-027, December 2006, http://www.water.epa.gov/polwaste/npdes/stormwater/upload/sector_1_landfills.pdf ); and,

- "Sector N: Scrap Recycling and Waste Recycling Facilities" (EPA Office of Water, EPA-833-F-06-029, December 2006, http://www.epa/gov/npdes/pubs/sector_n_scrapprecycling.pdf).

3.     Compliance with the storm water sampling, monitoring and reporting requirements of the General Permit.

4.     Sampling of storm water at least four (4) times per year over each of the next five (5) years: at "first flush"; the first significant rain after "first flush"; the first significant rain after April 1; and the second significant rain after April 1.

5.     100% of the discharge from the Caspar facility must be discharged through discrete conveyances.

6.     Any discharge from the Caspar facility to a water of the United States must be sampled during the four (4) sampling events identified in paragraph #4 above.

7.     Preparation and submittal to the RWQCB of a "Reasonable Potential Analysis" for the Caspar facility and its operations.

8.     Preparation of an updated SWPPP for the Caspar facility including a monitoring program, with a copy provided to River Watch.

**CONCLUSION**

CWA §§ 505(a)(1) and 505(f) provide for citizen enforcement actions against any "person," including individuals, corporations, or partnerships, for violations of NPDES permit requirements and for un-permitted discharges of pollutants. 33 U.S.C. §§ 1365(a)(1) and (f), § 1362(5). An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Violators of the Act are also subject to an assessment of civil penalties of up to $37,500 per day/per violation for all violations pursuant to Sections 309(d) and 505 of the Act, 33 U.S.C. §§ 1319(d), 1365. *See also* 40 C.F.R. §§ 19.1-19.4. River Watch believes this Notice sufficiently states grounds for filing suit in federal court under the "citizen suit" provisions of CWA to obtain the relief provided for under the law.

The violations set forth in this Notice effect the health and enjoyment of members of River Watch who reside and recreate in the affected community. Members of River Watch use the affected watershed for recreation, sports, fishing, swimming, hiking, photography, nature walks and the like. Their health, use and enjoyment of this natural resource is specifically impaired by the Discharger's violations of the CWA as set forth in this Notice.

The CWA specifically provides a **60-day** "notice period" to promote resolution of disputes. River Watch strongly encourages the Discharger to contact River Watch within **20 days** after receipt of this Notice Letter to: (1) initiate a discussion regarding the allegations detailed in this Notice, and (2) set a date for a site visit of the Caspar facility. In the absence of productive discussions to resolve this dispute, or receipt of additional information demonstrating that the Discharger is in compliance with the strict terms and conditions of the General Permit, River Watch intends to file a citizen's suit under CWA § 505(a) when the 60-day notice period ends.

Very truly yours,

David Weinsoff

DW:lhm

cc:
Administrator
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N. W.
Washington, D.C. 20460

Regional Administrator
U.S. Environmental Protection Agency, Region 9
75 Hawthorne Street
San Francisco, CA 94105

Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, CA 95812

Gerald Wayne Ward - Registered Agent
Solid Wastes of Willits, Inc.
7925 Oak Pond Court
Redwood Valley, CA 95470

Waste Management - Bay Area
Administrative Offices
172 98th Ave
Oakland, California 94603

Geoffrey Brunet
Mendocino County Department of Transportation
Solid Waste Division
340 Mendocino Drive
Ukiah, CA 95482

Members of the Board of Directors
Mendocino County Solid Waste Management Authority
3200 Taylor Drive
Ukiah, CA 95482